IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL CARGILL | : | |
| | : | CIVIL ACTION NO.: 1:19-cv-349 |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| WILLIAM BARR, | : | |
| IN HIS OFFICIAL CAPACITY AS | : | |
| ATTORNEY GENERAL | : | |
| OF THE UNITED STATES | : | |
| | : | |
| & | : | |
| | : | |
| UNITED STATES DEPARTMENT | : | |
| OF JUSTICE | : | |
| | : | |
| & | : | |
| | : | |
| THOMAS E. BRANDON, | : | |
| IN HIS OFFICIAL CAPACITY AS | : | |
| ACTING DIRECTOR | : | |
| BUREAU OF ALCOHOL, TOBACCO, | : | |
| FIREARMS AND EXPLOSIVES | : | |
| | : | |
| & | : | |
| | : | |
| BUREAU OF ALCOHOL, TOBACCO, | : | |
| FIREARMS AND EXPLOSIVES | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

The U.S. Constitution vests "*All* legislative Powers" in the Congress and directs that the President "shall take Care that the Laws be faithfully executed … . " U.S. Const. art I, § 1, and art. II, § 3 (emphasis added). It is therefore a basic tenet of our government that the Executive Branch may not, on its own, rewrite the law as it sees fit.

The Department of Justice and the Bureau of Alcohol, Tobacco, Firearms and Explosives have violated this basic principle by issuing the "Bump-Stock-Type Devices" Final Rule. Contrary to statutory language enacted by Congress (and signed by the President), and circumventing congressional efforts to revise that language, this rule is scheduled to make hundreds of thousands of otherwise law-abiding Americans into felons in defiance of constitutional restraints on executive power. Whatever the merits of such a policy, the Final Rule violates the fundamental constitutional order and thus cannot be tolerated.

Plaintiff Michael Cargill, like hundreds of thousands of his fellow Americans, legally purchased a bump-stock device with the ATF's express approval. And even though the law written by Congress has not changed, the Department of Justice has ordered Mr. Cargill to destroy or surrender his device or face criminal prosecution. To make matters worse, since the Final Rule has come under attack in various lawsuits filed across the country, the Defendants have taken the position that the rule is not a "final" rule at all, but a mere interpretation of the statutes that make machineguns illegal, and that bump stock devices have been illegal "machineguns" since 1934, when the National Firearms Act was first enacted. Consequently, Mr. Cargill, and many thousands of other law-abiding Americans, have now been declared to have been violating a criminal statute for the entire time they have owned bump stocks. The Constitution does not permit such lawmaking by executive fiat, and the enforcement of this rule must be permanently enjoined.

## PARTIES

1.     Plaintiff Michael Cargill is a natural person and a resident of the State of Texas.

2.     Mr. Cargill is a law-abiding person and has no disqualification that would prevent him from lawfully owning or operating a firearm and related accessories. Mr. Cargill owned two

bump stocks until March 25, 2019, when he was forced to surrender them to the Bureau of Alcohol, Tobacco, Firearms and Explosives under the Final Rule.

3.      Defendant William Barr, Attorney General of the United States, is the head of the Department of Justice.

4.      Defendant AG Barr is sued in his official capacity.

5.      Defendant United States Department of Justice is an agency of the United States, which is partially responsible for the administration and enforcement of the National Firearms Act and the Gun Control Act.

6.      Defendant Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, is the acting head of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

7.      Defendant Acting Director Brandon is sued in his official capacity.

8.      Defendant the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is an agency of the United States, which is partially responsible for the administration and enforcement of the National Firearms Act and the Gun Control Act.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

10.     Venue for this action properly lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(b)(2), (e)(1)(C) because Mr. Cargill resides in this judicial district, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and because the property at issue in this action is situated in this judicial district.

## STATEMENT OF FACTS

### I. LEGAL BACKGROUND

#### A. The Relevant Statutes

11.     In 1934 Congress passed the National Firearms Act (NFA), which regulated firearms under Congress's power to lay and collect taxes.

12.     Under the NFA, Congress criminalized the possession or transfer of an unregistered firearm, while also prohibiting the registration of firearms otherwise banned by law. *See* 26 U.S.C. §§ 5812(a) (registration prohibited "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law"), 5861 (prohibited acts).

13.     In 1968, Congress passed the Gun Control Act (GCA) criminalizing possession of firearms for certain classes of people. *See* 18 U.S.C. § 921 *et seq*.

14.     Beginning in 1986, Congress amended the GCA, prospectively outlawing most machineguns and simultaneously making it unlawful for any person to register those weapons.

15.     Today, with limited exceptions for governmental actors and machineguns that were in existence and registered prior to the effective date of the statute, May 19, 1986, it is a federal felony offense for any person to "transfer or possess a machinegun." 18 U.S.C. § 922(o).

16.     This offense is punishable by up to 10 years in federal prison for first-time offenders. 18 U.S.C. § 924(a)(2).

17.     As defined by Congress, under both the GCA and NFA, the term "machinegun" means

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a

4

machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 921(23) ("The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act.").

18.    The President is also empowered by the Arms Export Control Act of 1976, 22 U.S.C. § 2778, to limit the import and export of certain firearms. This law restricts the import and export of "machineguns" by reference to both the GCA and the NFA. 27 C.F.R. § 447.2(a); *see also* 27 C.F.R. § 447.21 (U.S. Munitions Import List, Category I(b) ("Machineguns, submachineguns, machine pistols and fully automatic rifles")).

**B. Delegation of Statutory Authority**

19.    With respect to the NFA, Congress provided that the Secretary of the Treasury was tasked with "the administration and enforcement" of the statute, while the ATF, under the authority of the Attorney General, was tasked with issuing certain "rulings and interpretations" related to the NFA's requirements. 26 U.S.C. § 7801(a)(2)(B).

20.    Congress has therefore purported to give the ATF the power to interpret the NFA.

21.    Congress also granted the Secretary of the Treasury the authority to "prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." 26 U.S.C. § 7805(a).

22.    The ATF was under the supervision of the Department of Treasury prior to 2002, but it now operates under the authority of the Attorney General. *See* 26 U.S.C. § 7801(a) (outlining distinct NFA authority after 2002).

23.    Neither the Attorney General nor the ATF has been given substantive rulemaking authority under the NFA.

24.     With respect to the GCA, Congress granted the Attorney General the authority to "prescribe only such rules and regulations as are necessary to carry out the provisions of" the GCA. 18 U.S.C. § 926(a). This authority previously belonged to the Secretary of the Treasury. *See* Pub. L. 107-296, Title XI, § 1112(f)(6), Nov. 25, 2002, 116 Stat. 2276 (transferring Secretary's authority to the Attorney General).

25.     The Attorney General has delegated his authority under the GCA to the ATF. 28 C.F.R. § 0.130(a)(1).

26.     The Attorney General has also delegated his purported authority under the NFA to the ATF. 28 C.F.R. § 0.130(a)(2).

27.     The ATF has issued regulations related to the NFA at 27 C.F.R. § 479.1 and related to the GCA at 27 C.F.R. § 478.1.

28.     As relevant here, in 1986 the ATF, acting through the Department of the Treasury, set out a definition of "machinegun" under both the NFA and GCA, in reliance on the Secretary of Treasury's delegated authority under 18 U.S.C. § 926. *Commerce in Firearms and Ammunition; Temporary Rule*, 51 Fed. Reg. 39612, 39613 (Oct. 29, 1986).

29.     The ATF's definition for purposes of both acts was identical to the definition found in the statute. *See* 27 C.F.R. §§ 478.11 (GCA), 479.11 (NFA).

30.     The ATF has also defined "machinegun" for purposes of the Arms Export Control Act, and it has relied on its putative underlying authority to define the term under 18 U.S.C. § 926.

31.     Under this regulation a "'machinegun', 'machine pistol', 'submachinegun', or 'automatic rifle' is a firearm originally designed to fire, or capable of being fired fully automatically by a single pull of the trigger." 27 C.F.R. § 447.11.

6

### C. ATF Classifications

32.    The ATF Firearms and Ammunition Technology Division (FATD) is a division of the ATF responsible for technical determinations concerning types of firearms approved for importation into the United States and for rendering opinions regarding the classification of suspected illegal firearms and newly designed firearms.

33.    Within FATD, the Firearms Technology Industry Services Branch (FTISB, and formerly the Firearms Technology Branch (FTB)) responds to industry requests regarding importation evaluations and domestic manufacturing examinations.

34.    These entities provide guidance to the industry, by evaluating and classifying items submitted as either being a firearm, an NFA firearm, or not subject to the jurisdiction of the ATF.

35.    Individuals may submit letter requests to the ATF to clarify what laws and regulations the items may or may not be subject to.

36.    ATF makes classifications based on the most current laws and regulations at the time of submission and on the results of physical examination of that specific item.

37.    Classifications are memorialized via a letter from the ATF, and each letter is particular to the item submitted for evaluation.

### II. ATF'S PREVIOUS ACTIONS REGARDING BUMP STOCKS

### A. ATF's Approval of the Slide Fire Device

38.    "Bump fire" is a shooting technique where a user of a firearm quickly engages the trigger of a semiautomatic weapon multiple times, resulting in rapid fire.

39.     As described by the ATF in a 2006 letter ruling, "'bump fire' is a vernacular used in the firearms culture … meaning rapid *manual* trigger manipulation to simulate automatic fire." (underline in original; italics added).

40.     The ATF continued in its ruling, "As long as you must consciously pull the trigger for each shot of the 'bump fire' operation, you are simply firing a semiautomatic weapon in a rapid manner and are not violating any Federal firearm laws or regulations."

41.     Bump fire requires two-handed operation of a firearm, where the shooter engages the trigger with a shooting hand, while simultaneously applying forward pressure with the other hand.

42.     As the ATF has explained, "bump-stock-type devices" are a type of firearm stock that allows the firearm to slide back-and-forth freely in the shooter's hands. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514, 66516 (Dec. 26, 2018) (hereinafter, *Final Rule*).

43.     According to the ATF, when using a bump stock, a shooter rests his trigger finger on a plastic ledge that is part of the bump stock (and not on the trigger), with that dominant hand holding the stock firmly against his shoulder.

44.     Then, while "maintaining constant forward pressure with the non-trigger hand on the barrel-shroud or fore-grip of the rifle, and maintaining the trigger finger on the device's ledge with constant rearward pressure[,]" the shooter engages the trigger. *Final Rule*, 83 Fed. Reg. at 66518.

45.     The recoil from the initial shot pushes the firearm rearward and causes the trigger to lose contact with the finger and *manually* reset. *Final Rule*, 83 Fed. Reg. at 66516-17.

46.     By applying continuous forward pressure with the non-trigger hand, the shooter is able to force the trigger back into his trigger finger, and thus "re-engages by 'bumping' the shooter's stationary finger" into the trigger. *Final Rule*, 83 Fed. Reg. at 66516.

47.     The "Slide Fire" is a type of bump stock that was commercially available in the United States starting in 2010.

48.     The Slide Fire device is a "hollow shoulder stock intended to be installed over the rear of an AR-15," and is "intended to assist persons whose hands have limited mobility to 'bump-fire' an AR-15 type rifle." John R. Spencer, Chief, Firearms Technology Branch, *Slide Fire Approval* (June 7, 2010) (Slide Fire Approval).

49.     "The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed." *Slide Fire Approval*.

50.     "In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand." *Slide Fire Approval*.

51.     In reliance on this approval, Mr. Cargill lawfully purchased two Slide Fire bump stocks in April 2018, prior to the Slide Fire's classification as a machinegun.

52.     Until March 25, 2019, Mr. Cargill continued to own his two Slide Fire bump stocks for personal use. On March 25, 2019, however, Mr. Cargill surrendered his Slide Fire bump stocks to the ATF as directed by the Final Rule. Mr. Cargill has asked the ATF to preserve his bump stocks pending the outcome of this lawsuit.

## B. ATF's Approval of Other Bump Stocks

53.     The ATF has consistently determined that bump stocks, including the Slide Fire, are not machineguns under the relevant statutory definition, and it had never concluded otherwise.

54.     In 2003, the ATF determined that a device called the "Akins Accelerator," which used recoil springs to mechanically increase a firearm's firing rate, was not a machinegun. *See Akins v. United States*, 82 Fed. Cl. 619, 621 (Ct. Cl. 2008).

55.     Then, on "November 22, 2006, more than three years after ATF's initial classification," the ATF reversed course and declared the Akins Accelerator to be a machinegun. *Id.* at 621.

56.     On December 13, 2006, the ATF followed up the Akins letters by issuing ATF Ruling 2006-2, which classified as a machinegun any device that, "when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted." *Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm*, ATF Rul. 2006-2, at 3 (Dec. 13, 2006) (ATF Rul. 2006-2).

57.     The ATF focused on the statutory phrase "single pull of the trigger," and held that the Akins Accelerator was a machinegun because "when activated by a single pull of the trigger, [it] initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted." ATF Rul. 2006-2, at 2-3.

58.     In reaching this conclusion, the ATF highlighted the effect of the Akins Accelerator's recoil spring:

> A shooter pulls the trigger which causes the firearm to discharge. As the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the

stock. The trigger mechanically resets, and the device, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger. Provided the shooter maintains finger pressure against the stock, the weapon will fire repeatedly until the ammunition is exhausted or the finger is removed.

ATF Rul. 2006-2, at 2.

59.     After ATF Ruling 2006-02 was issued, manufacturers requested classification of bump-stock devices that did not use a spring to mechanically cause the trigger to contact the shooter's finger.

60.     In every case since Ruling 2006-02, the ATF concluded that bump-stock devices that did not use a spring were not machineguns under the statutory definitions.

61.     Since issuing Ruling 2006-02, the ATF has never interpreted the statutory definition of machinegun to encompass bump stocks that rely exclusively on the shooter's physical manipulation of the trigger, instead of a spring mechanism.

62.     On June 18, 2008, the ATF approved a bump-stock device that allowed the shooter to use the firearm's recoil to force the trigger back against the shooter's finger, without using a spring.

63.     As described by the ATF, if an "_intermediate_ amount of pressure is applied to the fore-end [of the firearm] with the support hand, the shoulder stock device will recoil forward far enough to allow the trigger to mechanically reset." (emphasis in original).

64.     So long as the shooter "[c]ontinued intermediate pressure" "to the fore-end," the recoil would "push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired."

65.     The ATF concluded this did not meet the statutory definition because "every subsequent shot depends on the shooter applying the appropriate amount of forward pressure to

11

the fore-end and timing it to contact the trigger finger of the firing hand," and "each shot [was] fired by a single function of the trigger" because "the shooter pulls the firearm forward to fire each shot."

66.     Since the June 18, 2008 letter ruling, the ATF has issued approvals for at least 11 additional bump-stock devices that did not use springs.

67.     On June 26, 2008, the ATF approved a bump-stock device because "the absence of an accelerator spring … prevents the device from operating automatically" and thus was not a machinegun.

68.     On June 7, 2010, the ATF concluded that the Slide Fire bump stock, which is the type owned by Mr. Cargill, "has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed."

69.     Accordingly, the ATF said that the Slide Fire "is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearm Act."

70.     On May 25, 2011, the ATF approved a stock designed to fit over a rifle and allow the rifle "to reciprocate back and forth in a linear motion," because the "absence of an accelerator spring or similar component in the submitted device prevents the device from operating automatically as described in ATF Ruling 2006-2."

71.     On March 9, 2011, the ATF approved "a sliding shoulder-stock type buffer-tube assembly" fitted over a rifle because it "has no automatically functioning mechanical parts or springs and performs no automatic mechanical function."

72.     On April 2, 2012, the ATF approved a "plastic shoulder stock designed to function on an AR-15 type rifle" because it too required the application of "the appropriate

amount of forward pressure to the fore-end," and thus was "incapable of initiating an automatic firing cycle."

73.     On July 9, 2012, the ATF approved a "replacement shoulder stock for a Saiga-12 type shotgun" which "allows the shotgun to slide back and forth, independently of the shoulder stock and pistol grip," and found that it "is a firearm part and is not regulated."

74.     On July 13, 2012, the ATF approved a "'bump fire' type stock designed for use with a semiautomatic AK-pattern type rifle," which allowed the rifle "to reciprocate back and forth in a linear motion," and found it was "NOT a machinegun under the NFA … or the GCA."

75.     On February 11, 2013, the ATF approved the "Bumpski" bump fire stock and, for the same reasons as above, concluded that "it is NOT a machinegun under the NFA … or the GCA."

76.     On May 1, 2013, the ATF approved the "HailStorm" "'bump-fire' type stock," once again because the device lacked "any operating springs, bands, or other parts which would permit automatic firing."

77.     On September 14, 2015, the ATF approved yet another bump-stock device because it too required manual input from the shooter and lacked springs or other similar parts.

78.     Finally, on April 6, 2017, the ATF again approved a "Bump Fire Stock" because, like all the others, the device required manual input from the shooter and lacked springs or other similar parts.

79.     Indeed, the ATF's position on these devices was so well established that on April 16, 2013, Richard W. Marianos, ATF Assistant Director for Public and Governmental Affairs, rejected a congressional request to reclassify bump stocks as machineguns.

80.     The ATF explained that, in the past, the "Akins Accelerator incorporated a mechanism to automatically reset and activate the fire-control components of a firearm," whereas modern bump stocks like "the Slide Fire Solutions stock," "require[] continuous multiple inputs by the user for each successive shot." Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter, at 1-2 (Apr. 16, 2013).

81.     The ATF noted that bump fire stocks "do not fall within any of the classifications for firearm contained in Federal law" and the "ATF does not have the authority to restrict their lawful possession, use, or transfer." *Id.* at 2.

### III. ATF'S AND CONGRESS'S ACTIONS FOLLOWING THE LAS VEGAS SHOOTING

82.     On October 1, 2017, a shooter opened fire on a large crowd of people in Las Vegas, Nevada, killing 58 people and injuring hundreds of others. *Final Rule*, 83 Fed. Reg. at 66516.

83.     Some of the firearms found at the scene reportedly were equipped with bump fire stocks.

84.     Following the Las Vegas mass shooting, there was significant political pressure on the ATF, Congress, and the Trump Administration to ban the ownership of bump stocks.

85.     Nevertheless, the ATF continued to insist that it had no legal authority to regulate bump stocks, consistent with more than 15 years of agency precedent, spanning three presidential administrations.

86.     On October 2, 2017, ATF Acting Director Thomas Brandon sent an email to a subordinate, asking "are these [bump stocks] 'ATF approved' as advertised?"

87.     On October 2, 2017, Acting Director Brandon received a reply that said, "They are approved as advertised as long as an individual doesn't perform additional modifications to the firearm."

88.     On October 4, 2017, Representative David Cicilline proposed H.R. 3947, "The Automatic Gunfire Prevention Act," which would have amended the GCA to prohibit any "trigger crank, a bump-fire device, or any part, combination of parts, component, device, attachment, or accessory that is designed or functions to accelerate the rate of fire of a semiautomatic rifle but not convert the semiautomatic rifle into a machinegun."

89.     H.R. 3947 was never advanced in the House and lapsed with the conclusion of the 115th Congress.

90.     Also on October 4, 2017, Senator Dianne Feinstein proposed S. 1916, which was identical to H.R. 3947.

91.     On October 10, 2017, Representative Carlos Curbelo proposed H.R. 3999, which would have amended the GCA to prohibit bump-stock devices.

92.     The bill, which apparently recognized that bump stocks could not be classified as machineguns, would have added a new prohibition to the GCA for "any part or combination of parts that is designed and functions to increase the rate of fire of a semiautomatic rifle but does not convert the semiautomatic rifle into a machinegun."

93.     H.R. 3999 was never advanced in the House and lapsed with the conclusion of the 115th Congress.

94.     On October 31, 2017, Representative Brian Fitzpatrick introduced H.R. 4168, "Closing the Bump-Stock Loophole Act," to amend the NFA to require registration of any

"reciprocating stock, or any other device which is designed to accelerate substantially the rate of fire of a semiautomatic weapon."

95.     H.R. 4168 also failed to advance in the House and expired with the conclusion of the 115th Congress.

96.     On December 26, 2017, after President Donald J. Trump asked his administration to review how bump stocks and similar devices were regulated, the ATF issued an "Advance Notice of Proposed Rulemaking" (ANPRM) asking for public comment on whether bump stocks had been properly classified as "accessories" under federal law. 82 Fed. Reg. 60929 (Dec. 26, 2017).

97.     On February 20, 2018, President Trump issued a memorandum titled, "Presidential Memorandum on the Application of the Definition of Machinegun to 'Bump Fire' Stocks and Other Similar Devices."

98.     In the memorandum President Trump "direct[ed] the Department of Justice to dedicate all available resources" "to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns" as "expeditiously as possible."

99.     On February 20, 2018, Senator Feinstein issued a press release in response to the presidential memo, which said, "The ATF currently lacks authority under the law to ban bump stocks. The agency made this clear in a 2013 letter to Congress, writing that 'stocks of this type are not subject to the provisions of federal firearms statutes.' The ATF director said the same thing to police chiefs a few months ago, which they confirmed in an open Judiciary Committee hearing."

100.    On February 28, 2018, Senator Jeff Flake introduced S. 2475, the "Banning Unlawful Machinegun Parts Act of 2018," which would have amended both the NFA and the

GCA to prospectively ban any unregistered device that "materially increases the rate of fire of the firearm" or "approximates the action or rate of fire of a machinegun."

101.    Like H.R. 3947 and H.R. 3999, this legislation recognized that such devices were "not a machinegun" under existing definitions.

102.    S. 2475 did not advance in the Senate and expired at the conclusion of the 115th Congress.

103.    On March 14, 2018, the Senate Judiciary Committee held a hearing where it considered Senator Feinstein's bump-stock legislation.

104.    At the hearing ATF Acting Director Brandon testified that legislation would be "clearly the best route" to attempt to regulate bump stocks, even though the ATF had by then already issued the ANPRM.

105.    Acting Director Brandon also testified that on October 1, 2017, he had consulted with "technical experts," "firearms experts" and "lawyers" within the ATF, and the consensus within the agency was that "bump stocks" "didn't fall within the Gun Control Act and the National Firearms Act."

106.    Acting Director Brandon testified, however, that he had since changed his position based on input from the Attorney General.

107.    S. 1916 did not advance from the Judiciary Committee and expired at the conclusion of the 115th Congress.

108.    Senator Feinstein issued a statement on March 23, 2018, saying in full:

Until today, the ATF has consistently stated that bump stocks could not be banned through regulation because they do not fall under the legal definition of a machine gun.

Now, the department has done an about face, claiming that bump stocks do fall under the legal definition of a machine gun and it can ban them through regulations.

The fact that ATF said as recently as April 2017 that it lacks this authority gives the gun lobby and its allies even more reason to file a lawsuit to block the regulations.

Unbelievably, the regulation hinges on a dubious analysis claiming that bumping the trigger is not the same as pulling it. The gun lobby and manufacturers will have a field day with this reasoning. What's more, the regulation does not ban all devices that accelerate a semi-automatic weapons rate of fire to that of a machine gun.

Both Justice Department and ATF lawyers know that legislation is the only way to ban bump stocks. The law has not changed since 1986, and it must be amended to cover bump stocks and other dangerous devices like trigger cranks. Our bill does this — the regulation does not.

109. Thus, even in the aftermath of the Las Vegas shooting, the ATF and Congress all maintained that bump stocks could not be deemed machineguns under existing federal law.

**IV. THE FINAL RULE**

110. On March 29, 2018, the ATF issued a "Notice of Proposed Rulemaking," (NPRM) proposing to classify bump stocks as machineguns, and to amend ATF's definitions of machinegun in the Code of Federal Regulations. 83 Fed. Reg. 13442 (Mar. 29, 2018).

111. The NPRM recounted how it had been issued "in response" to correspondence it had received "from members of the United States Senate and the United States House of Representatives, as well as nongovernmental organizations," and at the prompting of President Trump in his presidential memorandum, all "[f]ollowing the mass shooting in Las Vegas on October 1, 2017." 83 Fed. Reg. at 13443, 13446.

112. On December 26, 2018, the Attorney General and the ATF issued their Final Rule. 83 Fed. Reg. at 66514.

113. The Final Rule amends the statutory definition of a "machinegun" by amending three regulations: 27 C.F.R. §§ 447.11, 478.11 and 479.11.

18

114.    The amendment to Section 447.11 modifies the definition of "machinegun" under the Arms Export Control Act, 22 U.S.C. § 2778, pursuant to the President's authority to designate items on the United States Munitions List. *Final Rule*, 83 Fed. Reg. at 66553-54.

115.    The amendment to Section 478.11 modifies the definition of machinegun under the GCA, purportedly under the Attorney General's authority set out in 18 U.S.C. § 926(a). *Final Rule*, 83 Fed. Reg. at 66554.

116.    The amendment to Section 479.11 modifies the definition of machinegun under the NFA, purportedly under the authorization of 26 U.S.C. § 7805. *Final Rule*, 83 Fed. Reg. at 66554.

117.    Under the final rule all three definitions are the same.

118.    For all provisions, a "machinegun" means any weapon

which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. For purposes of this definition, the term 'automatically' as it modifies 'shoots, is designed to shoot, or can be readily restored to shoot,' means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and 'single function of the trigger' means *a single pull of the trigger* and analogous motions. The term 'machinegun' includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed *so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter*.

*Final Rule*, 83 Fed. Reg. at 66553-54 (emphasis added).

119.    Because these devices had been previously approved by the ATF for sale, "current possessors of these devices will be required to destroy the devices or abandon them at an ATF office prior to the effective date of the rule." *Final Rule*, 83 Fed. Reg. at 66514.

120.    The rule is scheduled to take effect on March 26, 2019. *Final Rule*, 83 Fed. Reg. at 66555.

121.    The ATF has estimated that as many as 520,000 bump-stock devices were sold legally between 2010 and 2018, each at a price of between $179.95 and $425.95. *Final Rule*, 83 Fed. Reg. at 66547.

122.    In total, the ATF has estimated that Americans spent $102.5 million on the purchase of these devices, all of which have now been ordered to be destroyed or surrendered to the ATF. *Final Rule*, 83 Fed. Reg. at 66547.

**V. THE FINAL RULE'S IMPACT ON MR. CARGILL**

123.    In April 2018, Mr. Cargill lawfully acquired two Slide Fire bump-stock devices, which had been approved for sale by the Bureau of Alcohol, Tobacco, Firearms and Explosives, for use in recreational shooting and target practice.

124.    The Final Rule bans both of Mr. Cargill's Slide Fire bump-stock devices and directs him to destroy or surrender his Slide Fire devices before March 26, 2019, the effective date of the rule. As a result, on March 25, 2019, Mr. Cargill surrendered both of his Slide Fire devices to the ATF. Mr. Cargill surrendered the devices under protest and only because the Final Rule makes them illegal as of March 26, 2019. Mr. Cargill has asked the ATF to preserve his Slide Fire devices pending the outcome of this lawsuit.

125.    Moreover, the Defendants are now taking the position that bump stocks have been illegal "machineguns" all along, despite the ATF's prior approval, which means that Mr. Cargill has been in violation of a criminal statute for the entire time he owned his bump stocks.

126.    As a result of the Final Rule and the Defendant's actions as described herein, Mr. Cargill has suffered and will continue to suffer harm in the form of the violation of his

20

constitutional rights, the deprivation of his property, and the threat that he will be criminally prosecuted for having owned his Slide Fire devices.

## COUNT I: VIOLATION OF U.S. CONSTITUTION, ARTICLES I, §§ 1, 7 AND II, § 3— THE DEFENDANTS HAVE VIOLATED THEIR CONSTITUTIONAL OBLIGATIONS BY AMENDING CONGRESSIONALLY-APPROVED STATUTES

127.    Article I, § 1 of the Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States."

128.    Article I, § 7, Clauses 2 and 3 of the Constitution requires that "Every Bill" shall be passed by both the House of Representatives and the Senate and signed by the President "before it [may] become a Law."

129.    Article II, § 3 of the Constitution directs that the President "shall take Care that the Law be faithfully executed … ."

130.    Congress did not prohibit the possession of bump-stock devices, including the Slide Fire, by statute.

131.    Bump stocks are not regulated "machineguns" under the text of the National Firearms Act *or* the Gun Control Act.

132.    Both the National Firearms Act and the Gun Control Act were passed by both chambers of the Congress and presented to the President for approval.

133.    The Final Rule directly and deliberately conflicts with the statutory definition of a "machinegun" set out in 26 U.S.C. § 5845(b) and incorporated at 18 U.S.C. § 921(23).

134.    The Final Rule was not passed by either chamber of the Congress nor was it presented to the President for approval.

135.    Instead, the Final Rule was written and signed by the ATF and the Attorney General, neither of which is politically accountable to the American people.

136.    The Final Rule conflicts with the statutory text and thus violates Article I, § 1 of the U.S. Constitution.

137.    The ATF and the Attorney General have rejected their obligation to take care that the laws are faithfully executed under Article II, § 3 of the U.S. Constitution because they have issued the Final Rule in direct conflict with the statutory text passed by Congress.

138.    The ATF and the Attorney General have evaded the bicameralism and presentment requirements set out in Article I, § 7 of the U.S. Constitution because they have amended congressionally approved statutes, which were passed in compliance with these procedures, without also following the required processes.

139.    The ATF and the Attorney General have also evaded the bicameralism and presentment requirements set out in Article I, § 7 of the U.S. Constitution because Congress considered at least five different bills during the 115th Congress, which would have regulated bump stocks, but it did not enact any of them.

140.    Rather than allow the democratic process to function as it is constitutionally required, the ATF and the Attorney General issued the Final Rule without input from Congress.

141.    As a result, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent injunction barring enforcement of the Final Rule against him and all those similarly situated within the jurisdiction of the United States District Court for the Western District of Texas, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## COUNT II: VIOLATION OF U.S. CONSTITUTION, ARTICLES I, § 1 AND II, § 3—NON-DIVESTMENT

142.    Article I, § 1 of the Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States."

143.    Article II, § 3 of the Constitution directs that the President "shall take Care that the Law be faithfully executed … ."

144.    A "fundamental precept" of "another strand of [] separation-of-powers jurisprudence, the delegation doctrine," "is that the lawmaking function belongs to Congress, U.S. Const., Art. I, § 1, and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996).

145.    Congress may not "abdicate or [] transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935).

146.    The President, acting through his agencies, therefore, may not exercise Congress's legislative power to declare entirely "what circumstances … should be forbidden" by law. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 418-19 (1935).

147.    Congress did not prohibit the possession of bump-stock devices, including the Slide Fire, by statute.

148.    Bump stocks are not regulated "machineguns" under the text of the National Firearms Act *or* the Gun Control Act.

149.    Ownership of the Slide Fire bump stock has not been prohibited by any act of Congress.

150.    Congress considered at least five different bills during the 115th Congress, which would have regulated bump stocks, but it did not enact any of them.

151.    The Attorney General, at the President's direction, issued the Final Rule to criminalize conduct not covered by statute.

152.    The Attorney General is also tasked with enforcing and prosecuting violations of the NFA and the GCA, and with the new requirements set out in the Final Rule.

153.    The Attorney General's statutory rewrite will make owners of the estimated 520,000 lawfully acquired bump stocks into felons, despite the lack of a statutory prohibition on these items.

154.    Congress did not divest itself of the authority to define the term "machinegun" under the NFA and GCA.

155.    Even if Congress wanted to divest itself of that authority, it could not do so because defining crimes is an essential legislative function reserved exclusively for Congress.

156.    Congress may not divest itself of the authority to define the term "machinegun" under the NFA and GCA, because doing so would allow the Executive Branch, not Congress, to define what circumstances will be made criminal.

157.    The Final Rule violated Article I, § 1 and Article II, § 3 of the U.S. Constitution because it improperly defined a crime even though Congress did not divest itself of the authority to define the term "machinegun."

158.    The Final Rule also violated Article I, § 1 and Article II, § 3 of the U.S. Constitution because, even if Congress attempted to divest itself of its legislative power, the Executive Branch may not rewrite criminal prohibitions in this fashion.

159.    As a result of the foregoing, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent

injunction barring enforcement of the Final Rule against him and all those similarly situated

within the jurisdiction of the United States District Court for the Western District of Texas,

attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

### COUNT III: VIOLATION OF U.S. CONSTITUTION, ARTICLES I, § 1 AND II, § 3—VIOLATION OF THE SEPARATION OF POWERS

160.    Article I, § 1 of the Constitution provides: "All legislative Powers herein granted

shall be vested in a Congress of the United States."

161.    Article II, § 3 of the Constitution directs that the President "shall take Care that

the Law be faithfully executed … ."

162.    "Even before the birth of this country, separation of powers was known to be a

defense against tyranny," and "it remains a basic principle of our constitutional scheme that one

branch of the Government may not intrude upon the central prerogatives of another." *Loving v.*

*United States*, 517 U.S. 748, 756-57 (1996).

163.    Congress did not prohibit the possession of bump-stock devices, including the

Slide Fire, by statute.

164.    Bump stocks are not regulated "machineguns" under the text of the National

Firearms Act *or* the Gun Control Act.

165.    Ownership of the Slide Fire bump stock has not been prohibited by any act of

Congress.

166.    Congress considered at least five different bills during the 115th Congress, which

would have regulated bump stocks, but it did not enact any of them.

167.    The Attorney General, at the President's direction, issued the Final Rule to

criminalize conduct not covered by statute.

168.     The Attorney General is also tasked with enforcing and prosecuting violations of the NFA, the GCA, and the new requirements set out in the Final Rule.

169.     The Attorney General's interpretation will make owners of the estimated 520,000 lawfully acquired bump stocks into felons, despite the lack of a statutory prohibition on these items.

170.     The Attorney General may not define the scope of a criminal statute that he is tasked with enforcing, because that would combine the lawmaking and law-enforcing powers in the same person or entity—which violates the separation of powers.

171.     The Final Rule therefore violates the separation of powers established by Article I, § 1 and Article II, § 3 of the U.S. Constitution.

172.     As a result of the foregoing, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent injunction barring enforcement of the Final Rule against him and all those similarly situated within the jurisdiction of the United States District Court for the Western District of Texas, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## COUNT IV: VIOLATION OF U.S. CONSTITUTION, ARTICLE I, § 1— THE DEFENDANTS LACKED STATUTORY, AND THEREFORE CONSTITUTIONAL, AUTHORITY TO ISSUE THE FINAL RULE

173.     Article I, § 1 of the Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States."

174.     No agency has any inherent power to make law, and "an agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

175.    Congress did not prohibit the possession of bump-stock devices, including the Slide Fire, by statute.

176.    The National Firearms Act gives substantive rulemaking authority only the Secretary of the Treasury.

177.    Neither the Attorney General nor the Bureau of Alcohol, Tobacco, Firearms and Explosives has any substantive rulemaking authority under the NFA.

178.    The Final Rule, which was issued by the ATF and signed by the Attorney General, purports to rewrite the definition of "machinegun" set out in the NFA.

179.    The Secretary of the Treasury has not approved the Final Rule.

180.    The Final Rule was issued without any statutory authority and therefore violates Article I, § 1 of the U.S. Constitution.

181.    As a result of the foregoing, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent injunction barring enforcement of the Final Rule against him and all those similarly situated within the jurisdiction of the United States District Court for the Western District of Texas, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## COUNT V: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(2)(A), (C) — RULE IN EXCESS OF STATUTORY AUTHORITY AND OTHERWISE NOT IN ACCORDANCE WITH LAW

182.    As defined by Congress, under both the GCA and NFA, the term "machinegun" means

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a

machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 921(23) ("The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act.").

183. The Supreme Court has explained that the term "automatically" means the firearm will continue to fire rounds without additional "manual manipulation" by the operator after the initiation of firing. *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994).

184. The phrase "single function of the trigger" means the operator engages the triggering mechanism through a single physical act.

185. Courts have said that a "single function of the trigger" can be accomplished by any physical manipulation that initiates a firing sequence, whether or not the shooter pulls a lever on the firearm. *See United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002).

186. A "single function of the trigger" means that the trigger does not mechanically reset between shots.

187. The Slide Fire bump-stock device is a hollow shoulder stock intended to be installed over the rear of an AR-15, and it is intended to assist persons whose hands have limited mobility to "bump-fire" an AR-15 type rifle.

188. The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed.

189. In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand.

190. The recoil from the initial shot pushes the firearm rearward and causes the trigger to lose contact with the finger and manually reset.

191.     By applying continuous forward pressure with the non-trigger hand, the shooter is able to force the trigger back into his trigger finger and thus re-engages by "bumping" the shooter's stationary finger into the trigger.

192.     Under the *statutory* definition, the Slide Fire bump stock is not a machinegun because it requires additional manual manipulation of the firearm by the operator to place another round in the chamber after each round is fired.

193.     Under the *statutory* definition, the Slide Fire bump stock is not a machinegun because it requires the shooter to manually engage a single function of the trigger for each round that is fired.

194.     Under the *statutory* definition, the Slide Fire bump stock is not a machinegun because the trigger mechanism manually resets between each round that is fired.

195.     The new rule defines a machinegun as any weapon

which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. For purposes of this definition, the term 'automatically' as it modifies 'shoots, is designed to shoot, or can be readily restored to shoot,' means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and 'single function of the trigger' means a single pull of the trigger and analogous motions. The term 'machinegun' includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

*Final Rule*, 83 Fed. Reg. at 66553-54.

196.    The Final Rule conflicts with the statutory definition because it expands the definition of "automatically" to exclude any type of additional manual manipulation of the firearm by the operator that places another round in the chamber after each round is fired, other than the rearward action of the trigger mechanism.

197.    The Final Rule also conflicts with the statutory definition because it limits the definition of a "single function of the trigger" only to a "single pull of the trigger," even where a shooter can manually engage the trigger's function without "pulling" the trigger.

198.    The Final Rule further conflicts with the statutory definition because it expands the phrase "single function of the trigger" to include a series of shots between which the trigger function manually resets.

199.    The Final Rule is an unreasonable, arbitrary and capricious and impermissible interpretation of the statutory definition because it expands the definition of "automatically" to ignore any type of additional manual manipulation of the firearm by the operator that places another round in the chamber after each round is fired, other than the rearward action of the trigger mechanism.

200.    The Final Rule is an unreasonable, arbitrary and capricious and impermissible interpretation of the statutory definition because it limits the definition of a "single function of the trigger" only to a "single pull of the trigger," even where a shooter can manually cause the trigger's function without "pulling" the trigger.

201.    The Final Rule is an unreasonable, arbitrary and capricious and impermissible interpretation of the statutory definition because it expands the phrase "single function of the trigger" to include a series of shots between which the trigger function manually resets.

30

202.    The Final Rule is an impermissible interpretation of the statutory definition because it raises serious constitutional questions as noted herein, and agencies may not interpret statutory language in a manner that raises serious constitutional questions unless the statutory text unambiguously requires that construction. *See, e.g.*, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

203.    The Final Rule was issued in excess of statutory jurisdiction, authority, limitations and short of statutory right and is therefore invalid under 5 U.S.C. § 706(2)(C).

204.    The Final Rule is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and is therefore invalid under 5 U.S.C. § 706(2)(A).

205.    As a result of the foregoing, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent injunction barring enforcement of the Final Rule against him and all those similarly situated within the jurisdiction of the United States District Court for the Western District of Texas, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## COUNT VI: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A), RULE IS ARBITRARY AND CAPRICIOUS

206.    Prior to the Las Vegas shooting on October 1, 2017, the ATF had consistently and frequently insisted that that bump-fire stocks, "do not fall within any of the classifications for firearm contained in Federal law" and the "ATF does not have the authority to restrict their lawful possession, use, or transfer." Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter, at 2 (Apr. 16, 2013).

207.    The FTB examined and reviewed the Slide Fire bump stock in 2010 and concluded that it was not a machinegun.

208.    The Slide Fire bump stock owned by Mr. Cargill is materially identical to the stock approved by the ATF in 2010.

209.    On October 1, 2017, ATF Acting Director Brandon consulted with "technical experts," "firearms experts" and "lawyers" within the ATF, who confirmed that "bump stocks" "didn't fall within the Gun Control Act and the National Firearms Act."

210.    The ATF reconsidered its position only in response to directions from the President of the United States and the Department of Justice.

211.    The ATF did not conduct any additional technical analysis of bump stocks prior to issuing the Final Rule.

212.    The ATF did not reexamine the Slide Fire before promulgating the Final Rule.

213.    The ATF relied on factors which Congress had not intended it to consider when it issued the Final Rule because it addressed a purely political question not within the ATF's authority to consider.

214.    The ATF's Final Rule also runs counter to the evidence before the agency, and its reversal was not prompted by any new evidence.

215.    The ATF's Final Rule runs counter to the evidence before the agency, because it rejected the technical conclusions of its own experts at the insistence of the Department of Justice and the President.

216.    The ATF's Final Rule is not a product of the agency's expertise, because it contradicts the agency's expert conclusions going back to at least 2006.

217.    The ATF's Final Rule was issued after the Attorney General overruled the ATF's technical determination in favor of a policy determination on which the ATF had no expertise.

218.   The Final Rule is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and is therefore invalid under 5 U.S.C. § 706(2)(A).

219.   As a result of the foregoing, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent injunction barring enforcement of the Final Rule against him and all those similarly situated within the jurisdiction of the United States District Court for the Western District of Texas, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

### COUNT VII: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(C)—RULE IN EXCESS OF STATUTORY AUTHORITY

220.   Under the National Firearms Act, Congress provided the Attorney General with the authority to administer and enforce the statute. 26 U.S.C. § 7801(a)(1)(2)(A).

221.   Congress also provided the ATF, under the authority of the Attorney General, with the authority to issue certain "rulings and interpretations" related to the National Firearms Act's requirements. 26 U.S.C. § 7801(a)(2)(B).

222.   Congress granted the Secretary of the Treasury the authority to "prescribe all needful rules and regulations for the enforcement of [the National Firearms Act], including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." 26 U.S.C. § 7805(a).

223.   Neither the Attorney General nor the ATF has any substantive rulemaking authority under 26 U.S.C. § 7805(a).

224.   With respect to the Gun Control Act, Congress granted the Attorney General the authority to "prescribe only such rules and regulations as are necessary to carry out the provisions of" the GCA. 18 U.S.C. § 926(a).

225.    This authority had previously belonged to the Secretary of the Treasury. *See* Pub. L. 107-296, Title XI, § 1112(f)(6), Nov. 25, 2002, 116 Stat. 2276 (transferring Secretary's authority to the Attorney General).

226.    The Attorney General has delegated his authority under the GCA to the ATF. 28 C.F.R. § 0.130(a)(1).

227.    The statutory definition of machinegun is set out in the NFA at 26 U.S.C. § 5845(b).

228.    The GCA incorporates that definition by reference at 18 U.S.C. § 921(23).

229.    The Final Rule, which was issued by the ATF and signed by the Attorney General, purports to rewrite the definition of "machinegun" set out in the NFA at 26 U.S.C. § 5845(b).

230.    The Final Rule attempts to incorporate this rewritten definition by reference in the GCA.

231.    The Final Rule was issued under the Attorney General's claimed authority under 18 U.S.C. § 926(a) and 26 U.S.C. §§ 7801(a)(2)(A), 7805(a).

232.    The Attorney General has no substantive rulemaking authority related to the NFA under 26 U.S.C. § 7805(a).

233.    Only the Secretary of the Treasury has substantive rulemaking authority related to the NFA under 26 U.S.C. § 7805(a).

234.    The Secretary of the Treasury has not approved the Final Rule.

235.    The Attorney General's rulemaking authority under 18 U.S.C. § 926(a) cannot operate to rewrite a separate statute under which the Attorney General has no substantive rulemaking authority.

236.    The Attorney General's administrative and enforcement authority under 26 U.S.C.

§ 7801(a)(2)(A) does not allow the Attorney General to issue substantive rules.

237.    The ATF's interpretive authority under 26 U.S.C. § 7801(a)(2)(B) does not allow

the ATF to issue substantive rules.

238.    The Attorney General lacks the statutory authority to issue the Final Rule,

revising the statutory definition found in 26 U.S.C. § 5845(b).

239.    The Final Rule was issued in excess of statutory authority and is therefore invalid.

240.    As a result of the foregoing, Mr. Cargill has continued and will continue to suffer

harm in the form of a violation of his constitutional rights, a deprivation of his property, and

potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent

injunction barring enforcement of the Final Rule against him and all those similarly situated

within the jurisdiction of the United States District Court for the Western District of Texas,

attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## COUNT VIII: INTERPRETATION OF THE NATIONAL FIREARMS ACT AND GUN CONTROL ACT IN EXCESS OF STATUTORY AUTHORITY AND IN VIOLATION OF THE CONSTITUTION

241.    Since the Final Rule was issued, a number of individuals have brought

constitutional challenges to the Rule in federal courts. In at least one of those actions, brought in

the Federal District Court for the District of Columbia, the Defendants have taken the position

that the Final Rule is, in fact, not a final rule at all but a mere interpretation of the National

Firearms Act and the Gun Control Act.

242.    According to this interpretation of the relevant statutes, bump stocks have always

been machine guns under the relevant statutes despite the ATF's previous conclusion that bump

stocks were not machine guns.

35

243.    According to the Defendants' current position, anyone who has possessed a bump stock has been in violation of the Gun Control Act, which prohibits the transfer or possession of machine guns. 18 U.S.C. § 922(o). Violations of this statute carries penalties of up to 10 years in federal prison for first-time offenders. 18 U.S.C. § 924(a)(2).

244.    Mr. Cargill purchased his two Slide Fire bump stocks in April 2018, which is within the statute of limitations for violations of the relevant statutes.

245.    Under the Defendants' current position, Mr. Cargill thus faces criminal liability based on his reliance on the ATF's previous approval of his bump stocks and despite the fact that he has complied with the Final Rule and surrendered his bump stocks.

246.    Defendants' current interpretation of the relevant statutes conflicts with the statutory definition of machinegun and with the ATFs previous interpretations of that definition.

247.    The Defendants' current interpretation is therefore in excess of statutory jurisdiction, authority, limitations and short of statutory right and is therefore invalid under 5 U.S.C. § 706(2)(C).

248.    Defendants' current interpretation of the relevant statutes is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and is therefore invalid under 5 U.S.C. § 706(2)(A).

249.    Defendants' current interpretation of the Final Rule violates the APA for an additional reason: A "rule" under the APA is forbidden to have retroactive effect. *See* 5 U.S.C. § 551(4) (defining "rule" as "the whole or a part of an agency statement of general or particular applicability *and future effect* designed to implement, interpret, or prescribe law or policy" (emphasis added)); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988). If Defendants are contending that the Final Rule retroactively imposes criminal liability on Mr. Cargill and others

who purchased bump stocks in reliance on ATF's previous regulatory guidance, then the Final Rule no longer qualifies as a "rule" under the APA and is invalid for that reason.

250.   Defendants' current interpretation violates the constitution's separation of powers, the due process clause of the Fifth Amendment, and the ex post facto clause of Article I, section 9.

251.   As a result of the foregoing, Mr. Cargill has continued and will continue to suffer harm in the form of a violation of his constitutional rights, a deprivation of his property, and potential criminal prosecution. He is therefore entitled to a declaratory judgment and permanent injunction barring enforcement of the relevant statutes against him for his past possession of any bump stock devices that the ATF had previously approved for private ownership, along with attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## DEMAND FOR RELIEF

Plaintiff Mr. Cargill respectfully requests that the Court:

(i) Hold unlawful and set aside the Final Rule under 5 U.S.C. § 706(2);

(ii) Issue a preliminary and permanent injunction prohibiting Defendants from enforcing the Final Rule against Plaintiff;

(iii) Issue a preliminary and permanent injunction prohibiting Defendants from enforcing the Final Rule against all persons similarly situated to the Plaintiff within the jurisdiction of the United States District Court for the Western District of Texas;

(iv) Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that the Final Rule issued by Defendants is unenforceable against Plaintiff;

(v) Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that the Final Rule issued by Defendants is unenforceable against all persons similarly situated to the Plaintiff within the jurisdiction of the United States District Court for the Western District of Texas;

(vi) Issue a declaratory judgment and permanent injunction barring enforcement of the relevant statutes against Mr. Cargill for his past possession of any bump stock devices that the ATF had previously approved for private ownership.

(viii) Award attorneys' fees and costs to Plaintiff; and

(ix) Award any other relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all triable issues in the present matter.

March 25, 2019

Respectfully submitted.

/s/ Jonathan F. Mitchell
**Jonathan F. Mitchell**
TX Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

**Steven M. Simpson\***
Senior Litigation Counsel
**Caleb Kruckenberg\***
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5237
steve.simpson@ncla.legal
*Counsel for Plaintiff*
\*Applications for Admission *Pro Hac Vice* to be filed